UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-45-GWU


MITTIE LOIS MAYTON,                                                    PLAINTIFF,


VS.                         **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

Mittie Mayton brought this action to obtain judicial review of an administrative decision on her application for Disability Insurance Benefits.  The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
       If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
       activity, does he have any "severe" impairment or combination
       of impairments--i.e., any impairments significantly limiting his
       physical or mental ability to do basic work activities?  If not, a
       finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
       whether the claimant's severe impairment(s) or combination of
       impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher</u>
<u>v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2
and analyze factors such as residual functional capacity, age, education and work
experience.

    One of the residual functional capacity levels used in the guidelines, called
"light" level work, involves lifting no more than twenty pounds at a time with frequent
lifting or carrying of objects weighing up to ten pounds; a job is listed in this category
if it encompasses a great deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls; by definition,
a person capable of this level of activity must have the ability to do substantially all
these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having
the capacity to lift no more than ten pounds at a time and occasionally lift or carry
small articles and an occasional amount of walking and standing.  20 C.F.R. §
404.1567(a), 416.967(a).

    However, when a claimant suffers from an impairment "that significantly
diminishes his capacity to work, but does not manifest itself as a limitation on
strength, for example, where a claimant suffers from a mental illness . . .
manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  Id.
In such cases, the agency may be required to consult a vocational specialist.
Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.   Varley v.
Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Mayton, a 59-year-old
former histotechnologist with a high school education, suffered from impairments
related to an anxiety disorder.  (Tr. 46, 50).  While the plaintiff was found to be
unable to return to her past relevant work, the ALJ determined that she retained the
residual functional capacity to perform a restricted range of work at all exertional
levels.  (Tr. 48, 50).  Since the available work was found to constitute a significant
number of jobs in the national economy, the claimant could not be considered totally

disabled.   (Tr. 50-51).   The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 50).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included no exertional limitations but did include such non-exertional restrictions as a (1) a limitation to jobs requiring only simple instructions in work settings requiring no more than occasional changes of routines or work settings; (2) no more than occasional and casual contact with other persons including coworkers and supervisors; (3) no contact with the general public; and (4) an inability to perform jobs requiring production rate or quota jobs.  (Tr. 37-38).  In response, Miller opined that such a person could perform the job of hand packer (100,000 national jobs), production worker (100,000 national jobs), food preparation worker (100,000 national jobs) and stock clerk (90,000 national jobs).   (Tr. 38-39).   Therefore, assuming that the vocational factors considered by the expert fairly characterized Mayton's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ properly determined that Mayton did not suffer from any physical restrictions.  In February of 2007, Dr. Laura Grima, a treating source, noted a history

of chronic fatigue syndrome, Epstein-Barr Virus, allergic rhinitis, anxiety and hypertension.  (Tr. 216).  However, Dr. Grima did not identify specific functional limitations.  (Tr. 205-248).  Dr. Henry Broniak of Henry Ford Wyandotte Hospital noted that the plaintiff suffered from many chemical allergies in March of 2007 but also did not identify specific functional limitations.  (Tr. 385).  The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Thus, these reports do not support the plaintiff's claim of total disability.

Mayton moved to Kentucky from Michigan and began a treating relationship with Dr. Lovie Stallworth of Appalachian Regional Healthcare.  (Tr. 20, 36).  Dr. Stallworth opined in January of 2008 that Mayton did not suffer from physical restrictions.  (Tr. 283).  This report does not support the plaintiff's claim of total disability.

In May of 2007, the staff at Associates of Neurology of Lexington, Kentucky evaluated Mayton for her sensitivity to smell problem.  (Tr. 391).  The staff concluded that this was not a neurological problem and recommended a psychiatric consultation.  (Tr. 393).  Physical restrictions were not imposed.  (Tr. 391-394).

Dr. Thomas Coury examined Mayton in April of 2008 and noted an impression of fatigue, muscle weakness, anxiety and sensitivity to smells.  (Tr. 325).  Dr. Coury specifically noted that the plaintiff would have no restriction with regard

to stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or traveling.  (Id.).  The physician also indicated that the claimant's sensitivity to smells would not limit her from usual customary occupational activities.  (Id.).  This report does not support her claim of total disability.

Dr. Timothy Gregg reviewed the record in July of 2008 and opined that Mayton's impairments were not "severe."  (Tr. 366).  Therefore, substantial evidence supports the ALJ's findings with regard to the plaintiff's physical condition.

The ALJ also dealt properly with the evidence of record relating to Mayton's mental condition.  Dr. Grima had noted a "moderate" level of anxiety in April of 2007 but did not identify specific mental limitations.  (Tr. 222).

Dr. Joseph Csotty evaluated Mayton's mental status in April of 2007.  (Tr. 395-401).  The plaintiff reported complaints concerning sensitivity to smells and fatigue.  (Tr. 398-399).  Dr. Csotty diagnosed a generalized anxiety disorder.  (Tr. 401).  More severe mental limitations than those found by the ALJ were not imposed.  (Tr. 395-401).

In May of 2007, Mayton was seen at Ridge Behavioral Systems with complaints of anxiety and weakness.  (Tr. 256).  A neurological work-up was recommended.  (Tr. 260).  Specific mental limitations were not identified.  (Tr. 249-266).

Mayton sought treatment for her mental complaints at the Cumberland River Comprehensive Care Center.  The plaintiff was initially found to suffer from a panic disorder and later a generalized anxiety disorder.  (Tr. 268, 331, 371, 438).  The Cumberland River staff indicated that the claimant's interpersonal functioning would be "slightly low."  (Tr. 445).  The ALJ's findings were consistent with this assessment.

Psychologists Larry Freudenberger (Tr. 312-314) and Jane Brake (Tr. 362-364) each reviewed the record and opined that Mayton would be "moderately" limited in responding appropriately to changes in the work setting.  (Tr. 363).  The ALJ indicated that he gave these opinions "great weight."  (Tr. 49).  The hypothetical question was essentially consistent with these opinions.

Psychologist Jeanne Bennett examined Mayton in March of 2008 and diagnosed an anxiety disorder.  (Tr. 295).  Bennett opined that the plaintiff would be "moderately" limited in tolerating the stress and pressures of day-to-day employment.  (Tr. 296).  The claimant's functioning would not be impaired in such areas as understanding, remembering and carrying out simple, repetitive tasks, sustaining attention and concentration for simple repetitive tasks, and responding appropriately to supervision, co-workers and pressures in a work setting.  (Id.).  The ALJ also indicated that he gave this opinion great weight.  (Tr.  49).

9

Mayton argues that the ALJ erred by failing to present Bennett's "moderate" restriction concerning tolerance of stress and work pressures to the vocational expert despite alleging to give the opinion "great weight."  The defendant asserts that the hypothetical question included a number of limitations such as the restriction to simple instructions and the prohibition on quota rate and production work which would essentially limit the available work to low stress employment compatible with the doctor's opinion.  The hypothetical question was also compatible with the opinions of a treating source at Cumberland River and the reviewers.  The court finds that even if the ALJ erred, any error would be harmless. Social Security Ruling (SSR) 85-15 states that when a claimant's only impairment is mental but not of Listing severity, then a finding of disabled status is only appropriate if the there is a "substantial" loss of ability in one's capacity to understand, remember and carry out simple instructions, respond appropriately to changes in the work setting, to respond appropriately to supervision, coworkers and usual work situations or to deal with changes in a routine work environment.  The claimant's mental condition has not been shown to be this severe.  Therefore, the court must reject the plaintiff's argument.

Mayton also notes that the ALJ found that she suffered from "moderate" difficulties in maintaining concentration, persistence and pace.  (Tr. 48).  This restriction was not presented to the vocational expert which the plaintiff asserts was

reversible error.   However, the ALJ made this particular finding as part of the Psychiatric Review Technique (PRT) assessment concerning whether the claimant's mental condition met the requirements of one of the Listings of Impairments.  (Tr. 47-48).  As noted by the defendant, this was not part of his residual functional capacity assessment under the administrative regulations.  SSR 96-8p.  The Sixth Circuit Court of Appeals in Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) found that ALJs were not required to include such PRT findings in their residual functional capacity assessment.  Therefore, the court must reject the plaintiff's argument.

Mayton argues that the ALJ erred in rejecting her credibility without a sufficient explanation.  The ALJ indicated that the plaintiff's continued cigarette smoking habit was inconsistent with her claims of odor sensitivity since it exposed her to chemicals, such as formaldehyde, she indicated were problems for her.  (Tr. 49).   The court believes that this is actually a strong ground to question her credibility.  Furthermore, this was not the only reason the claimant was found not to be credible.  The ALJ also noted that neither Dr. Stallworth, a treating source, nor Dr. Coury, the examining consultant, thought that her alleged sensitivity to odors would impose work-related limitations.  (Tr. 46).  The ALJ found that the claimant's physical problems were not a "severe" impairment and the undersigned found that this finding was supported by substantial evidence.  Pain or complaints of other symptoms are to be evaluated under the standards announced in Duncan v.

11

11-45  Mittie Lois Mayton

Secretary of Health and Human Services , 801 F.2d 847, 853 (6th Cir. 1986): there
must be evidence of an underlying medical condition and (1) there must be
objective medical evidence to confirm the severity of the alleged symptoms arising
from the condition or (2) the objectively determined medical condition must be of a
severity which can reasonably be expected to give rise to the alleged symptoms.
In the present action, Mayton has not met this standard to demonstrate an
underlying physical problem.   Therefore, the court must reject the claimant's
argument.

Finally, Mayton asserts that the job numbers cited by the vocational expert
were not a significant number of other jobs in the economy as required by 20 C.F.R.
§ 404.1560(c)(1).  The Sixth Circuit Court of Appeals has noted that it is impossible
to "set forth one special number which is to be the boundary between a 'significant
number' and an insignificant number of jobs."  Hall v. Bowen, 837 F.2d 272 (6th Cir.
1988).  It has instructed that a judge:

> should consider many criteria in determining whether work exists in
> significant numbers, some of which might include:  the level of
> claimant's disability; the reliability of the vocational expert's testimony;
> the reliability of the claimant's testimony; the distance claimant is
> capable of traveling to engage in the assigned work; the isolated
> nature of the jobs; the types and availability of such work, and so on.
> The decision should ultimately be left to the trial judge's common
> sense in weighing the statutory language as applied to a particular
> claimant's factual situation.

Id.

12

11-45  Mittie Lois Mayton

In the present action, the plaintiff asserts that the 300,000 national jobs and 3,500 statewide positions cited by Miller were not a sufficient number of jobs.  The actual number of jobs cited by the expert was 390,000 national and 5,100 statewide positions, a considerably larger number of positions.[1]  (Tr. 38-39).  These job numbers are far less borderline than those alleged by the plaintiff.  The ALJ appears to have implicitly considered many of the Hall factors in his denial decision.  The ALJ relied upon Miller's testimony and, so, he clearly found the vocational expert to be reliable.  (Tr. 50-51).  The ALJ did not find the claimant to be fully credible and the court found this decision to be supported by substantial evidence.  (Tr. 49).  With regard to the level of her disability, Mayton was found to suffer only from rather modest mental restrictions.  (Tr. 48).  As found by the ALJ, neither Dr. Stallworth nor Dr. Coury imposed physical restrictions which would prevent the plaintiff from traveling to work.  (Tr. 46).  Dr. Coury specifically stated that there was no traveling limitation.  (Tr. 325).  Thus, the distance Mayton is capable of traveling to reach work is not in issue.  The cited jobs appear to be offered by Miller as specific examples of positions that could be performed rather than as an exhaustive list of all the jobs that could be performed.  (Tr. 38-39).  Therefore, under these

---

[1]The plaintiff overlooked the job of stock clerk/order filler with 90,000 national and 1,600 statewide positions.  (Tr. 37-38).  However, Miller clearly cited it in response to the first hypothetical question and did not reduce the numbers for this position when additional mental restrictions were presented for consideration.  (Tr. 38-39).  This mistake was also made by the ALJ in his denial decision.  (Tr. 50-51).

11-45  Mittie Lois Mayton

circumstances, the job numbers appear to the undersigned to be significant and the claimant's argument must be rejected.

    The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this decision.

    This the 23rd day of November, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

14